# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### Western Division

| | |
|---|---|
| DONNA JONES, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>PYXUS INTERNATIONAL, INC. f/k/a/ ALLIANCE ONE INTERNATIONAL, INC., J. PIETER SIKKEL, and JOEL L. THOMAS,<br><br>　　　　　　　　　　Defendants. | Case No.: 5:19-cv-00234<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Donna Jones ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Pyxus International, Inc. f/k/a/ Alliance One International, Inc. ("Pyxus" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Pyxus; and (c) review of other publicly available information concerning Pyxus.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Pyxus securities between June 7, 2018 and November 8, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Pyxus is an agricultural company that historically focused on purchasing, processing, and shipping tobacco to manufacturers of cigarettes and other consumer tobacco products throughout the world. In February 2018, the Company announced its plans to diversify to include cannabis products. The Company changed its name from Alliance One International, Inc. to Pyxus on September 12, 2018.

3. On November 8, 2018, the Company disclosed that sales declined approximately 12% year-over-year due to the timing of shipments and the larger crop last year in South America.

4. On this news, the Company's share price fell $7.01, or nearly 28%, to close at $18.26 on November 8, 2018, on unusually heavy trading volume.

5. On November 9, 2018, the SEC announced that the Company had settled charges that it had materially misstated financial statements with the Commission from at least 2011 through the second quarter of 2015 due to improper and insufficient accounting, processes, and

control activities for inventory, deferred crop costs, and revenue transactions in Africa.

6. On this news, the Company's share price fell $2.88, or nearly 16%, to close at $15.38 on November 9, 2018, on unusually heavy trading volume.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing longer shipping cycles; (2) that, as a result, the Company's financial results would be materially affected; (3) that the Company lacked adequate internal control over financial reporting; (4) that the Company's accounting policies were reasonably likely to lead to regulatory scrutiny; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this district.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Donna Jones, as set forth in the accompanying certification, incorporated by reference herein, purchased Pyxus securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Pyxus is incorporated under the laws of Virginia with its principal executive offices located in Morrisville, North Carolina. Pyxus's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "PYX."

15. Defendant J. Pieter Sikkel ("Sikkel") was the Chief Executive Officer ("CEO") of the Company at all relevant times.

16. Defendant Joel L. Thomas ("Thomas") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

17. Defendants Sikkel and Thomas, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded

herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Pyxus is an agricultural company that historically focused on purchasing, processing, and shipping tobacco to manufacturers of cigarettes and other consumer tobacco products throughout the world. In February 2018, the Company announced its plans to diversify to include cannabis products. The Company changed its name from Alliance One International, Inc. to Pyxus on September 12, 2018.

### Materially False and Misleading Statements Issued During the Class Period

19.    The Class Period begins on June 7, 2018. On that day, the Company announced its fiscal year 2018 financial results, stating in a press release, in relevant part:

Fiscal 2018

- Total sales and other operating revenues increased 7.7% to $1,846.0 million as a result of a 7.5% increase in average sales price due to favorable product mix mainly in South America and North America.

- Gross profit increased 13.5% to $246.2 million and gross profit as a percentage of sales improved to 13.3% from 12.7%.

- Operating income increased 30.7% to $110.6 million when compared to the prior year.

- Net income attributable to Alliance One International Inc. was $52.4 million, which included a net tax benefit of $58.8 million with $59.4 million associated with estimated discrete net tax benefits related to the new tax law enacted in December.

- Adjusted EBITDA* improved 15.4% to $168.5 million.

- During the current fiscal year, the Company purchased and cancelled $28.6 million of our existing 9.875% senior secured second lien notes due 2021, and in April 2018 purchased and cancelled an additional $10.9 million. There are currently $652.1 million of such notes outstanding.

20.    The same day, the Company filed its annual report on Form 10-K with the SEC for the period ended March 31, 2018 (the "2018 10-K"), affirming the previously announced

financial results. Regarding the factors affecting its financial results, the 2018 10-K stated, in relevant part:

> **Our financial results will vary according to growing conditions, customer indications and other factors, which reduces your ability to gauge our quarterly and annual financial performance.**
>
> Our financial results, particularly the quarterly financial results, may be significantly affected by fluctuations in tobacco growing seasons and crop sizes which affect the supply of tobacco. Crop sizes may be affected by, among other things, crop infestation and disease, the volume of annual tobacco plantings and yields realized by supplier and suppliers' elections to grow crops other than tobacco. The cultivation period for tobacco is dependent upon a number of factors, including the weather and other natural events, such as hurricanes or tropical storms, and our processing schedule and results of operations for any quarterly period can be significantly altered by these factors.
>
> The cost of acquiring tobacco can fluctuate greatly due to crop sizes and increased competition in certain markets in which we purchase tobacco. For example, short crops in periods of high demand translate into higher average green prices, higher throughput costs and less volume to sell. Furthermore, large crops translate into lower average green prices, lower throughput costs and excess volume to sell.
>
> Further, the timing and unpredictability of customer indications, orders and shipments cause us to keep tobacco in inventory, increase our risk and result in variations in quarterly and annual financial results. The timing of shipments can be materially impacted by shortages of containers and vessels for shipping as well as infrastructure and accessibility issues in ports we use for shipment. We may, from time to time in the ordinary course of business, keep a significant amount of processed tobacco in inventory for our customers to accommodate their inventory management and other needs. Sales recognition by us and our subsidiaries is based on the passage of ownership, usually with shipment of product. Because individual shipments may represent significant amounts of revenue, our quarterly and annual financial results may vary significantly depending on our customers' needs and shipping instructions. These fluctuations result in varying volumes and sales in given periods, which also reduces your ability to compare our financial results in different periods or in the same periods in different years.

21. Regarding legal proceedings, the 2018 10-K stated:

The Company received a subpoena from the SEC, dated November 28, 2016, for documents relating to the restatement of its financial statements for the years ended March 31, 2013, 2014 and 2015 and the three months ended June 30, 2015, which restatements were filed with the SEC on May 25, 2016. The Company is cooperating fully with the SEC and providing the requested materials.

22. On August 2, 2018, the Company announced its first quarter 2019 financial

results, stating in a press release, in relevant part:

> Total sales and other operating revenues increased 5.1% to $291.0 million as crops in South America and other origins returned to a more normalized cycle when compared to the same period last fiscal year.
>
> - Total sales and other operating revenues increased 5.1% to $291.0 million as crops in South America and other origins returned to a more normalized cycle when compared to the same period last fiscal year.
>
> - Gross profit increased 44.8% to $41.4 million, and gross profit as a percentage of sales also improved to 14.2% this year compared to 10.3% last year.
>
> - Operating income increased $5.3 million to $4.7 million.
>
> - Net loss attributable to Alliance One International, Inc. for the quarter improved to $0.8 million compared to $32.5 million last year and adjusted EBITDA improved 93.7% to $19.4 million.
>
> Pieter Sikkel, President and Chief Executive Officer, said, "This fiscal year is off to a strong start and progressing in line with our expectations. . . . Our solid financial performance in the first quarter was built on the success of operating improvements that began in fiscal 2018. We saw improvements in total sales and other operating revenues, gross profit, gross profit as a percentage of sales and adjusted EBITDA compared to the same period last year. Balance sheet management is a priority for fiscal 2019 and strong operating plans have been put in place to support our objectives, which include measured inventory reductions and associated decreases in debt by fiscal year end. . . . Our business is on track to deliver the full year results consistent with our previously announced guidance.

23. The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously announced financial results.

24. The above statements identified in ¶¶19-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing longer shipping cycles; (2) that, as a result, the Company's financial results would be materially affected; (3) that the Company lacked adequate internal control over financial reporting; (4) that the Company's accounting policies were reasonably likely to lead to regulatory scrutiny; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or

lacked a reasonable basis.

**Disclosures at the End of the Class Period**

25. On November 8, 2018, the Company disclosed that sales declined approximately 12% year-over-year due to the timing of shipments and the larger crop in South America the prior year.

26. On this news, the Company's share price fell $7.01, or nearly 28%, to close at $18.26 on November 8, 2018, on unusually heavy trading volume.

27. On November 9, 2018, the SEC announced that the Company had settled charges that it had violated the reporting, books and records, and internal accounting control provisions of the federal securities laws. The SEC stated, in relevant part:

> [M]anagers at AOI's Kenyan subsidiary, Alliance One Tobacco (Kenya) Ltd., overrode existing controls and failed to report accounting errors to AOI. As a result, AOI filed materially misstated financial statements with the Commission from at least 2011 through the second quarter of 2015. These misstatements resulted from improper and insufficient accounting, processes, and control activities for inventory, deferred crop costs, and revenue transactions in Africa. AOI overstated its inventory by approximately $32 million, accounts receivable by approximately $7 million, and retained earnings by approximately $39 million. The restatement also materially impacted AOI's pre-tax income or losses.

28. On this news, the Company's share price fell $2.88, or nearly 16%, to close at $15.38 on November 9, 2018, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Pyxus securities between June 7, 2018 and November 8, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30. The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, Pyxus's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Pyxus common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Pyxus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pyxus; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35. The market for Pyxus's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Pyxus's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Pyxus's securities relying upon the integrity of the market price of the Company's securities and market information relating to Pyxus, and have been damaged thereby.

36. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Pyxus's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Pyxus's business, operations, and prospects as alleged herein.

37. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pyxus's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was

revealed.

## LOSS CAUSATION

38. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39. During the Class Period, Plaintiff and the Class purchased Pyxus's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Pyxus, their control over, and/or receipt and/or modification of Pyxus's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pyxus, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41. The market for Pyxus's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Pyxus's securities traded at artificially inflated prices during the Class Period. On October 12, 2018, the Company's share price closed at a Class Period high of $43.05 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's

securities relying upon the integrity of the market price of Pyxus's securities and market information relating to Pyxus, and have been damaged thereby.

42. During the Class Period, the artificial inflation of Pyxus's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pyxus's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Pyxus and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43. At all relevant times, the market for Pyxus's securities was an efficient market for the following reasons, among others:

(a) Pyxus shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Pyxus filed periodic public reports with the SEC and/or the NYSE;

(c) Pyxus regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Pyxus was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44. As a result of the foregoing, the market for Pyxus's securities promptly digested current information regarding Pyxus from all publicly available sources and reflected such information in Pyxus's share price. Under these circumstances, all purchasers of Pyxus's securities during the Class Period suffered similar injury through their purchase of Pyxus's securities at artificially inflated prices and a presumption of reliance applies.

45. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pyxus who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pyxus's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pyxus's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pyxus's financial well-being and prospects, as specified herein.

51. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pyxus's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Pyxus and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pyxus's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Pyxus's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pyxus's securities during the Class Period at artificially high prices and were damaged thereby.

55. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Pyxus was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pyxus securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59. Individual Defendants acted as controlling persons of Pyxus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61. As set forth above, Pyxus and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 7, 2019					By:	*/s/ Lesley F. Portnoy*

**GLANCY PRONGAY & MURRAY LLP**

Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Donna Jones*

**BLUE LLP**

*/s/ Dhamian A. Blue*
Dhamian A. Blue
N.C. Bar No. 31405
Daniel T. Blue, Jr.
N.C. Bar No. 5510
Daniel T. Blue, III
N.C. Bar No. 27720
205 Fayetteville Street, Suite 300
Raleigh, NC 27601
Telephone: (919) 833-1931
Facsimile: (919) 833-8009
dab@bluellp.com
danblue@bluellp.com
dtb3@bluellp.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff Donna Jones*